I'm going to ask the clerk to call the case. Mr. Shepard, if you're ready, you may proceed. Good morning, Your Honors. Good morning, Counsel. My name is Adam Shepard and I represent the appellant, Carlos Deleon. Mr. Deleon was convicted of the offenses of predatory criminal sexual assault based on the fact that it involved two different victims. He received the sentence of mandatory natural life imprisonment. The first principle issue we raise on appeal is whether the defendant was denied his constitutional right to confrontation of the witness. Being in the same courtroom when the complaining witness is testified, that's a main issue. But even before we get to that, whether the trial court made the necessary findings to allow what's referred to as closed-circuit television. Parenthetically, it was not actually closed-circuit television. In this case, it was the Zoom platform. But the first issue is whether the court's findings that it was in the best interest of the children to allow this remote testimony before the jury was sufficient to trigger the procedure which was used. Because the statute at the time had done away with the best interest standard. That's what the law had used to be. And that's what the state at this pretrial hearing had argued to the judge. And the trial judge made that specific finding, actually, that it was not beholden to the best... Excuse me, that it wouldn't employ the best interest standard. So, Mr. Shepard, let's say we agree with you. The state was using the old statute. The court was misadvised. The court indicated that best interests was what should govern. But when I look at the actual hearing, what I see is testimony from the school counselors that seem, frankly, more than sufficient to satisfy all the requirements, the strictures of the statute. Wouldn't that be enough to affirm on that issue? No, Your Honor. And the reason is under Hawkins and Craig, it's not just the evidence, but the findings control. And those cases talk about individualized findings of necessity. And that's what's missing from this record, in addition to which the testimony there isn't necessarily what constitutes necessity. I think that's maybe the court's point here, wouldn't that be a necessity? Not necessarily. There was a lot of talk about general trauma, about discussing the case, even with the state's attorney and the state's attorney's investigators leading up to it. What the court didn't necessarily find is what the statute requires. A, that the minors would have suffered serious emotional distress, such that the child cannot reasonably communicate. It's not difficulty communicating. It's not could cause anxiety. That word was used a lot by the state and the trial court judge at this hearing. But it's that it cannot reasonably communicate. That's one standard. Second one, or that the child will suffer emotional distress that is likely to cause the child to suffer severe adverse effects. That's the one I'm focusing on, because it seems to me the testimony of the social workers both arguably satisfied that prong, which is an alternative prong, right? It is. My reply is the effects. For instance, one of the minors talked about this self-harm. All of this had nothing to do with the prospect of the defendant being in the same courtroom. The trauma of the case, the trauma of having to come to court, the trauma of discussing it in general. But what's missing is would that trauma have occurred if the complainant had to be in the same courtroom as her accuser? Who's to decide that? I'm sorry? Who's to decide that? The trial court. Okay. In our position. So your basic argument is, use the wrong words, best interest, which legally has some type of meaning in certain statutes and situations, and that that was not a conclusion based upon these articulable, from the record at least, on that second prong, trauma, anxiety, interference with testimony or effect on the child.  So is it not a reasonable inference that that would be what was behind the misuse of best interest term? I thought about that, and whether it was just inartful phrasing, except the trial court not only was it twice misused, but when articulating the ruling, he specifically said, the trial court judge, I'm using the best interest standard. I don't have to find necessity. So it wasn't just a phrase. Is necessity, is the word necessity in the statute? No, but it's been interpreted. It was first in 2024 by the Hawkins case, which relied, that was the Illinois Fourth Appellate District, and then they relied on the Craig case, was the U.S. Supreme Court case. And that's where this necessity language comes from. So best interest is not in the statute, and neither is necessity. No, but the language that's currently in the statute. Best interest was in the statute. Right, but at the time, it wasn't in the operative statute. Correct, and one of our arguments is that shows legislative intent. The fact that they removed best interest, I submit, we cite a case law in our brief, that shows legislative intent to definitively not use that standard. But what appeared to happen is that the danger of reading case law without updating the statute, so when states or the trial court judge is borrowing language from a case, talking about best interest, without cross-referencing the current statute, that appears to have happened in this case. So the only case, they had a case, that was decided seven months before this hearing, Hawkins. That explains the necessity standard. Then if you couple that error with this part about the... Where did the necessity standard come from, the statute? The word necessity is not in the statute. That's at the Illinois Appellate Court Fourth District. So the Fourth District basically engrafted necessity. They ruled that necessity was a required finding, but they based it on the U.S. Supreme Court case. Their interpretation of the Supreme Court. Well, the U.S. Supreme Court used the word necessity, and that's where it came from. But you would agree that the required findings in the statute would meet the necessity standard in Craig? In Craig. You would agree that what the statute is saying the court is supposed to find is necessity for purposes of Craig? Yes, the court was required to find necessity. So you don't have a problem with the statute per se. No. It's the court's application. Correct. The findings, our position is how is the appellate court to know whether there was compliance with these constitutional principles absent a clear finding. That's why we're asking for remand for this hearing and for clarified findings. And it's not. So what would the clear finding be? That. That you're suggesting that obviously you're maintaining was missing, but how would that articulated finding, what would it be? That it would be twofold. One, to track the language of the current statute, either that the child would be suffering serious emotional distress such that the child cannot reasonably communicate, or that the child will suffer severe emotional distress that is likely to cause the child to suffer severe adverse effects, and therefore that closed circuit television is necessary. But those two findings are not combined. Either one. Disjunctive. Correct. And then a statement that because of one or two, perhaps one and two, that it's necessary, right? Yes. The difference between this case and some others, this is not, it's not, the trial judge didn't meet the complaining witnesses at this hearing. He permitted, I don't quarrel with it, the social worker and the other professional. We don't quarrel with that. But it's not as though the judge looked right at these complainants, heard them testify. Of course, they were 13 at the time, which now that cuts against allowing this closed circuit television in light of the amended statute at age of 13. But he didn't meet them, so it's not like he judged the effects on them straight from the witness stand. The court relied on heresy, testimony, okay, but if you couple that with this improper standard for a defendant who's facing natural life imprisonment, what I'm arguing is strict compliance with the statute and the U.S. Supreme Court precedent should be necessary when a defendant's confrontation rights, such an important precept of constitutional law, is at stake here. Just to be clear, this 13 years, there's a rebuttal presumption if the child is under 13 years that this procedure should be followed, but it doesn't otherwise impact the applicability of the statute. Not the applicability. Rebuttable presumption goes away. Correct. My point was the same. Better than having the rebuttable presumption if you're the defendant, so that's why I submitted that at favor. Now, we couple that issue with the fact that this procedure, I know the defendant's lawyer, apparently pondering out loud, said to the trial court, what about the procedure where the defendant's outside the court? You mean to suggest he invited the error? The word error is, I'm not going to concede that he invited the actual error because he did object, after all, to this procedure in the first place. This was all over his objection. He pondered this and he agreed to it, no question in the law. I guess the error being the location of the defendant and the victim inside the courtroom, outside the courtroom. I understand. But what he could have been said to invite is that part where the trial court instructed the defendant remain absolutely silent. That interfered, so the defendant is in a side room with a second chair lawyer. He's told by the trial court that while the complainants are testifying in open court, if something comes to your mind, well, he's not even told what to do. The second chair is told, text the first chair who's present in the courtroom, I guess if there's a question the defendant wanted to ask, have asked the complaining witnesses. No, no, wait a minute. I misunderstand. I thought that suggestion of being able to text was a suggestion made by defense counsel to the court, and the court said fine. That is true, but that part was, the suggestion wasn't accompanied by the order to the defendant to, quote, remain absolutely silent. So what is the defendant to do? I'm going to suggest. It's hard enough. I also tried cases in the trial court. If the defendant is right there at counsel table and the lawyers cross-examining the complaint, it's hard enough for the defendant to pull on the sleeve of the lawyer. Well, you usually tell the defendant don't do that. Write it down. Write it down. Can't he write it down to the co-counsel in the room that he's with? But even if, first of all, there's no evidence that he had that capacity in the record. Second of all, there's a gap. All the cases we said in the brief talk about contemporaneously being of assistance to counsel. For the limited time for the text, the lawyer, who's standing up cross-examining, a lawyer's going to have to check his phone at counsel table to see what his co-counsel wrote. It's that contemporaneous. Of course, we're all familiar sometimes with trial judges and say, next question, counsel. Plus, there's a jury there, and there's a flow that needs to be had. That's not contemporaneous aid of counsel. I see I'm running low on the time. I want to just note this other thing about the ineffective assistance of counsel, about twice misinforming the jury about waiving the presumption of innocence. I don't know what exactly to think, but other than that shows it falls under the objective standard of professionalism and effective assistance of counsel on the prejudice problem. Let me ask a question about this. It's painful to me, but clearly what the lawyer meant was he gave up his right to remain silent, and he talked. And that fits into the context of both times when he says he gave up the presumption of innocence. But we do have the admonishments and jury instructions to the jury, which were presumably read at the beginning of the trial, and obviously we know they were read at the end of the trial. Isn't that presumed to cure that issue? Your Honor, like the old saying goes, can't unring that bell. It's hard enough if the State makes a misstatement. That's mostly what the case lie. It pretends to be a misstatement of law. But the defendant's own lawyer twice misstating it, we think it was so prejudicial, and I see I'm out of my time just to finish my sentence, that it wouldn't have been cured by jury instructions in this case. Justice Holdren, any questions? Just a question real briefly. How do you define courtroom? Where is it defined? I'm sorry, Your Honor. Courtroom. Courtroom. Are you defining it as a structure that's enclosed? Or what are you defining? I'm defining it as the well of the courtroom. The parent setup here was off to a side where there's a lot of— Well, I understand that. But in today's world, we're having remote arguments. We're having remote legal proceedings all over the place. Doesn't that imply that it's a remote courtroom, but it's still a courtroom? The cases we cite in the confrontation clause cases talk about the physical presence because that could affect the complainant's testimony when she has to confront her accuser. So the confrontation cases we say talk about face-to-face. Regardless of the nature of the proceeding, for example, in this type of proceeding involving minors? Yes. And I think also I know—I think that's why they have this closed circuit. That's what the legislator intended. The closed circuit television would have conveyed that maybe more than Zoom. And I don't know if it's a case of the legislature, the wording of Zoom not catching up with today's— Is there any functional difference? There is. What is the functional difference? Zoom has—we say it in a case where it talks about different boxes. The defendant, the complainants appear in different boxes. That's not the same with closed circuit television. So the trier of fact, or in this case, the defendant, he's observing the complaining witnesses, is looking at a small little box as opposed to closed circuit television. He might be—he knows these complainants. He might be able to pick up on any cues that another person couldn't. So the fact he was deprived of looking at them on a big screen is forced to look at them in a box. That's a difference. Statute doesn't define or give any description or explanation of closed circuit. Is that fair? That's fair. I have one lazy request, counsel, and that is if you could find a citation when you sit down as to the Court's statement regarding the best interest test. You said that the Court somewhat applied it, and that was revealing of how the Court was looking at it. You can do that afterwards.  Thank you. Thank you, Mr. Shepard. Ms. Schwinn. May it please the Court, counsel, good morning. My name is Kristen Schwinn, and I represent the DuPage County State Security's Office in this matter. Justice Heidel, I can actually provide that citation reference.  It's the Supplemental R.I., and it starts on page 241. That's the start of the Court's ruling for closed circuit testimony. I admit that there are several supplemental reports of proceedings, but it's the one that the clerk has deemed S.U.P.R.I. R.I. R.I., and I hope that helps. It's one of the in-counts records. Thank you. I hope that answers your question. It does.  Your Honors, the defendant has listed five different arguments here. Much of the time today has been spent on the first argument, so unless there are further questions on the additional arguments, I will respond predominantly to the argument that Your Honors, which is about the closed circuit testimony of the two child witnesses, excuse me, child victims in this case. Much has been made regarding best interests versus necessity. I will admit that perhaps the Court and the State at this matter were inartful in their use, in my opinion, of interchangeably best interests versus necessity. I agree. Judge Reedy said that it's best interests, not necessity. He wasn't saying they were the same. He did say those words, in fact. You are correct, Your Honor, that he did say that it's in the best interests and not necessity. Notwithstanding that, his entire ruling is premised on the idea that these two child victims needed to testify outside the presence of the defendant. I will note that the State, in their motion to permit closed circuit testimony, cited that the Court had to find that it was a necessity. That's on the common law record at page 264, so that was the actual motion before the Court by the State had the necessity terminology that would be required. And I admit that there were interchangeable about best interests. But I think, Justice Brendan, as you pointed out, even if the Court had set forth a best interest, this Court can affirm on any basis in the record. And I believe that the record itself and the testimony by the two mental health professionals that treated both victims found that there was a necessity to have these two victims testify outside the presence of the defendant. In Maryland v. Craig, much has been made about the confrontation. Maryland v. Craig, the U.S. Supreme Court case, permits closed circuit testimony as not an issue of confrontation. Was this closed circuit? Your Honor... You used it continuously. Closed circuit... And I don't know that it is anywhere that says closed circuit in the record. It doesn't say closed circuit. There is discussion about the ability for the defendant to see the child victims testify when they are not physically in the presence of the defendant. I would admit that there is nothing that defines closed circuit for this purpose of the statute. I believe, based on looking at the case law upon which the statute was enacted, the purpose is that providing the opportunity for the child victims to testify and the defendant to be able to view their testimony. Contemporaneously.  So I don't believe that there is an issue of confrontation on the closed circuit process itself. That... The closed circuit... It wasn't closed circuit. It was Zoom. It is Zoom. I would agree that Zoom is not exactly listed in the statute. I do... But is it functionally the same? It is functionally the same, which is that it is a very finite link. I apologize for my maybe technical... We're talking about remoteness, really. We're talking... Because the overarching concept, linguistically, is remoteness.  Absolutely. We're talking about the ability for contemporaneous viewing of the witnesses while maybe not in the physical presence of those witnesses. And that's exactly what happened here, such that the child victims were able... So as long as any technology touches on those three things, then that... Do you think that's... Your Honor, I can't go as far as... Statutorily approved. Your Honor, I can't go as far as any because that's not the facts in this case. I can say that Zoom, in this case, was the functional equivalent of a technological... But you just gave three examples. You said not physically present, right?  Able to observe the witness testifying. I think you had a third. Contemporaneous. Yeah, contemporaneous. Yes. Sure. Those seem to be where you want to say Zoom has that. I apologize if I misspoke, if that's the case. I'm saying in this case, Zoom has that. I believe the question was, does any of it have it? And I can't speak to any technology at this point. I'm just taking you far afield. We don't know what Elon Musk is doing today. Absolutely. But apparently, it must meet those three. Yes. Absolutely, Justice Holtbridge. I would say that Zoom meets those three components, which Marilyn v. Craig seemed to set forth to adequately safeguard the confrontation right of the defendant. Is there anything in Marilyn v. Craig that expresses a concern about the defendant remaining inside the courtroom? Does that play any role in the confrontation analysis? Your Honor, I think in this case, there have been, I will admit that in terms of Marilyn v. Craig, I am blanking on the actual facts of those cases. I believe the defendant testified with a screen of that. And there are instances in which the defendant, how the defendant, or excuse me, how the victim can or cannot see the defendant, and how the defendant can or cannot see the victim. There are instances in which a defendant in the courtroom, that would violate the confrontation rights. But in this case here, that did not happen because the defendant was able to contemporaneously view the victim's testifying via... Why do you think our statute says the defendant shall be located inside the courtroom while this is happening? Your Honor, I... Is there any constitutional import to that, I guess is my question. Your Honor, I'm not sure. However, in this case, if there was a constitutional protection to that, the defendant here waived that protection by deciding that they wanted to proceed in the manner that they did. It was the defendant's option to leave the courtroom instead of the victim's leave the courtroom. That was the attorney's suggestion. And when there was concern about it not being compliant with the statute, the court went one step further and admonished the defendant such that the defendant knew he was waiving his right to be able to be in the courtroom. So if there was any error... First, the trial court also said, I see problems with allowing that. That, you know what, that might be true, but then the court went on to admonish to say, you have this right, you are choosing not to do it, and you are choosing to proceed in this manner. Do you understand? Yes. Have you talked to your attorney about this? Yes. This is the way you would like to proceed? Yes. So if there were any issues, the defendant invited this potential error because that was the manner in which the defendant wanted to proceed. And when given the opportunity to know of this right, he freely waived this right. Can you clarify, actually, the structure of this for me? Maybe I missed it. Sure. This cubbyhole, which is kind of an interesting term, that he was placed into, whether he agreed or not, allowed him to view the testimony of the victims, alleged victims. Right? My understanding is he viewed the testimony via a laptop on Zoom. You know, we've gone beyond remote and physically present in this world today. He was able to see it, correct? Yes. But she, or both, I'm trying to remember, were not able to see him. Is that correct? Yes, that's correct. Okay. So this talking about the confrontational, if he were in the courtroom, then the complainant would be able to see and testify in that physical presence and be observed by the defendant, but also the complainant would be able to observe the defendant. Am I correct? Your Honor, the way the courtroom is set up, it's not in the record, the way the courtroom is set up is the defendant is sitting in an area where the victims cannot see the defendant. Right. And the defendant cannot see the victims. But for? But for the Zoom, but for the video on the computer.  Correct. So the victims are in the courtroom. The victims are in the courtroom. Testifying from the witness standpoint. Correct, Your Honor. And the defendant is not in the courtroom, so the jurors cannot observe the defendant's reaction to the testimony against them. Correct. Which seems to be somewhat constitutional. Correct. There is a cubbyhole, it is an area of the courtroom that is not viewable from the jury or the witnesses. So in my, that would be an area in which the defendant would have to have the ability to view the victims, and which they did, using the Zoom capabilities. And then I am, I know that the record does not adequately describe the structure of the courtroom. Does that make sense where they are? Justice Holdren, or is there? I'm just finding it an interesting arrangement. Sure. But, but for that. And is the, does the arrangement, the ultimate question is. Sure. Is it deprived the defendant of his constitutional right? No, I mean, it does not. Because as Maryland v. Craig permits, when the defendant can see the victim's testimony, that provides sufficient safeguards against their right to the confrontation clause. But when the victim can't see the accused. Correct. Was that addressed in Maryland? That was, yes. Or was it implied that that's okay? Well, in Maryland, it was an issue of. Well, the victim doesn't have a confrontation. Right. Correct, Your Honor. The victim doesn't have a confrontation issue. The issue is personal to the defendant, as if he gets the ability to look at the witnesses. And in Maryland v. Craig, there was a screen such that the defendant couldn't see the victims. And they found that, provided that there were sufficient safeguards, that did not violate the defendant's constitutional rights. I apologize if I'm just having some difficulties in understanding. Can I go back? Sure. I see your orange lights on. Can you explain to us why we shouldn't be as troubled as we might be about the defendant not once but twice waiving his presumption of innocence? In the closing arguments? Sure. Sure. I believe that when you look at the totality of the defense counsel's argument, precisely as you just mentioned, he was trying to articulate that the defendant did not have to talk to the police, but freely chose to do so because he believed that he did nothing wrong. And I will admit presumption of innocence has a very specific legal term of phrase. But for purposes of ineffective assistance of counsel, it's to look at the entirety of the closing argument. And the entirety of the closing argument was to emphasize the credibility of the defendant who testified that none of this occurred. The credibility of the defendant that he freely went to the police station, did not have to make a statement, chose to waive his rights and make a statement. And so that should bolster his credibility of his testimony that he did not commit these acts. However, you know, if this court were to find that that was deficient, you know, turning to the prejudice problem, you look at whether or not there were some sort of curing admonishments, which just fine as you mentioned, that the presumption of innocence, the court admonishments should cure any issue with that. You also look at whether or not this was used by the state in rebuttal, which it was not. It was not in a significant part of the, oh, I see my time is up, Your Honor. It was not a significant part of their closing argument. The closing argument ultimately was, you know, an issue of trying to say that the defendant's credibility, he was more credible than the victims. And defense counsel sought to emphasize that by the steps he took when he did not have to take those steps. And if there are no further questions, we ask that for the reasons set forth in our brief, that you affirm the conviction and sentence. Ms. Swinn, thank you. Thank you. Mr. Shepard, reply. Thank you. The court had inquired about the necessity of being in the physical presence of the complaints. We rely on the case, and it's cited in our reply brief of a People v. Salgado out of 2nd District, the 2012 case. There is a lot of that, as the case court may recall, where the child testimony occurred in chambers. The defendant wasn't there. The first issue is, did the defendant waive that right? Because he didn't object to that procedure. The court found there wasn't a waiver. The court found for that type of waiver, there needed to be a very rigorous akin to waiving a right to plead not guilty and plead guilty. But in that decision, there is a lot of talk about physical presence. One of the talk, some of the language in paragraph 21 talks about the particular need to interact with defense counsel contemporaneously. That's one issue. Then it goes on to talk about the right to confront witnesses. I'm quoting here. The Salgado case quotes the People v. Carruth. They quote, a 3rd District panel held, inter-quotes, proceedings implicating the ultimate decision of guilt or innocence. A defendant's appearance solely by closed-circuit television may be considered plain here, regardless of the strength of the state's evidence. End quote. So I do think that there is a constitutional difference between physical presence and remote presence. Your Honor, just to settle it, the exact citation was an exact page number the state stated. What happened on the best interest language is first the state said, and this is on page supplemental RI record and bounded 229. This is first the state's comments, quote, we don't need to show that closed-circuit TV is necessary. End quote. They went on to argue, quote, that is actually what is the best interest of the child. Then the court's comments that I rely on occurred supplemental RI 243. And the court stated the standard of review, as noted by parentheticals of the assistant state's attorney, she's correct, is the best interest standard. The Illinois statute requires only a finding that the closed-circuit television procedure would be in the child's best interest. End quote. Then the court goes on to make its ultimate findings, and this bears on supplemental RI 247, the following quote. So this court does find and grants the state's motion to eliminate as it relates to the two witnesses that it would be in their best interest to be permitted to testify via closed-circuit television. That, as I say, is on supplemental RI 247. Thank you. Thank you. So this is a – that is a big difference. As we cite in our reply brief, best interest, that's often used in family law cases. It can mean – it's a – not to borrow a phrase from one of the cases we cite, or flexible. It can mean best interest of the family dynamic. It could mean what's best for the child overall, but it doesn't rise to that high constitutional threshold in the statute about the trauma or the exact language of the severe emotional effect. Those are different standards as recognized by the law, and when we're talking about the defendant's constitutional right, which is a substantial right as recognized by all the cases, particularly by Salgado, we think that rigorous adherence to a statute which provides for an alternative to the Constitution, because the Constitution only provides for one method, confrontation. So when you're providing to an alternative on such a substantial right, we think the statute and the procedures outlined by the legislature should be adhered to. Thank you. I'm happy to answer any other questions. Thank you, Mr. Shepherd. Thank you. The court thanks both sides for spirited argument. We will take the matter under advisement and issue a decision in due course. Court is adjourned until the next argument. Thank you.